IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| E.Y., a Minor, by his Mother and Next Friend, Tenille Wallace, and TENILLE WALLACE, individually, ) ) ) ) Plaintiffs, ) v. ) ) THE UNITED STATES OF AMERICA, ) ) Defendant. ) | No. 10 C 7346 Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs E.Y., a minor, by his mother and next friend, Tenille Wallace, and Tenille Wallace, individually, filed their first amended complaint for damages in this medical malpractice action under the Federal Tort Claims Act, 28 U.S.C. § 2671 ("FTCA"), and the Family Expense Act, 750 ILL. COMP. STAT. 65/15, against defendant United States of America. Defendant has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the suit is barred by the two-year statute of limitations under 28 U.S.C. § 2401(b). For the reasons set forth below, the motion is denied.

## FACTS

The following facts come from plaintiffs' complaint and for purposes of evaluating the instant motion, the court takes them as true. On November 4, 2004, then-20-year-old plaintiff Tenille Wallace ("Tenille") first received medical care for her first pregnancy at the federally funded Friend Family Health Center, Inc. ("Center") and was treated by Dr. Nana Biney, M.D. On March 29, 2005, Tenille presented at the Center for a prenatal visit with elevated blood pressure, complaining of face and hand edema and visual changes. Tenille was evaluated and treated by Dr. Biney, who requested that she have prolonged fetal monitoring in labor and

delivery and that she return to the clinic in one week. Tenille, however, did not receive the prolonged fetal monitoring when she went into labor on April 4, 2005, and was taken to the University of Chicago Hospital ("Hospital"). Minor plaintiff E.Y. was delivered by C-section because of "non-reassuring fetal monitor strips." At the time of E.Y.'s birth, Tenille knew something was wrong because E.Y. was delivered looking "purple and limp," and within days thereafter a doctor told her that E.Y. had been deprived of some oxygen during delivery. Since then, Tenille, as the parent of E.Y., became obligated for various hospital and medical expenses resulting from E.Y.'s anoxic brain injury under the Family Expense Act, 750 ILL. COMP. STAT. 65/15.

On or about November 28, 2006, plaintiffs' counsel requested a complete copy of plaintiffs' records from the Center and the Hospital. On December 14, 2006, plaintiffs' counsel received a partial set of prenatal records from the Center. Sometime thereafter, plaintiffs' counsel received a partial set of plaintiffs' medical records from the Hospital. On September 11, 2007, plaintiffs' counsel sent the medical records from the Center and the Hospital to a maternal-fetal medicine specialist for review. On September 27, 2007, plaintiffs' counsel received the specialist's opinion that there was a negligent delay between Tenille's admission into the Hospital and plaintiff E.Y.'s delivery. This opinion did not mention prenatal care or possible negligence by the Center.

On October 17, 2007, plaintiffs' counsel requested additional records regarding Tenille that were not previously provided by the Center. On October 19, 2007, plaintiffs' counsel had a complete set of prenatal records from the Center. After receiving more records from the Hospital in January 2008 than were previously provided, on November 21, 2008, plaintiffs'

counsel sent the complete medical records from the Center and the Hospital to a second consultant for review. On November 25, 2008, the second consultant opined critically regarding potential negligence by the Center and Dr. Biney in failing to monitor and follow up on the conditions of plaintiffs, calling it a probable and proximate cause of E.Y.'s neurological injuries.

On December 10, 2008, plaintiffs filed an action against the Center, Dr. Biney, and defendants associated with the Hospital in the Circuit Court of Cook County, Illinois, which defendants removed to this court in June 2009. Given that the Center was a private entity that received grant money from the U.S. Public Health Services, pursuant to 42 U.S.C. § 233(b), the United States was substituted for the Center and Dr. Biney as defendant. Defendant United States moved to dismiss on the basis that plaintiffs failed to present their claims to the appropriate federal agency, and thus failed to exhaust their administrative remedies as required under the Federal Tort Claims Act, 28 U.S.C. § 2675(a). This court dismissed the FTCA claim against the United States without prejudice and remanded plaintiffs' state law claims to state court on September 30, 2009.

On October 28, 2009, plaintiffs filed an administrative tort claim with the Department of Health and Human Services ("HHS"). HHS denied this claim on July 27, 2010, entitling plaintiffs to file the instant action under 28 U.S.C. § 2401(b). Plaintiffs filed this action on November 15, 2010.

## **LEGAL STANDARD**

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to rule on its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court

accepts all well-pleaded allegations of the complaint as true and draws all reasonable inferences in the plaintiff's favor. See McMillan v. Collection Prof'ls, Inc., 455 F.3d 754, 758 (7th Cir. 2006). Nevertheless, the complaint must plead sufficient facts to suggest plausibly that the plaintiff is entitled to relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

## DISCUSSION

Defendant moves to dismiss plaintiffs' amended complaint for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The heart of defendant's Rule 12(b)(6) motion is that plaintiffs failed to meet the statutory requirement that they present their claims to the appropriate administrative agency, the U.S. Department of Health and Human Services, within two years after the claims accrued. According to 28 U.S.C. § 2401(b), "a tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." Plaintiffs' administrative claim is considered as having been filed on December 10, 2008, the date the underlying civil action was commenced in state court. See 28 U.S.C. § 2679(d)(5). Thus, for plaintiffs to proceed, their claims would have had to accrue after December 10, 2006.

Defendant argues that, assuming plaintiffs filed their claims with HHS on December 10, 2008, it was still beyond the two-year statute of limitations from the date of accrual. Defendant claims the statute of limitations began to run in or about April 2005, when plaintiff E.Y. was born and Tenille was first informed of a birth complication, or alternatively, at the latest, in November 2006, when plaintiffs' personal-injury attorney sought medical records from the Center and the Hospital.

4

Plaintiffs assert that the claims accrued on November 25, 2008, when the second specialist consulted told plaintiffs' counsel about potential negligence by the Center, in which case the December 2008 complaint filing was plainly within the two-year statute of limitations. Alternatively, plaintiffs argue that the claims did not accrue until September 27, 2007, when the first specialist opined about negligence by the Hospital, in which case plaintiffs would have had until September 2009 to file their claims with HHS. At the earliest, plaintiffs assert that their claims could have accrued on December 14, 2006, when plaintiffs' counsel first received a partial set of records from the Center, at which point they could send the records to medical experts.

A claim accrues under § 2401(b) when the plaintiff knows the existence and the cause of his injury, not later when he also knows that the acts inflicting the injury may constitute medical malpractice. U.S. v. Kubrick, 444 U.S. 111, 122-24 (1979). According to Supreme Court and Seventh Circuit precedent, the statute of limitations "begins to run either when the government cause is known or when a reasonably diligent person (in the tort claimant's position) reacting to any suspicious circumstances of which he might have been aware would have discovered the government cause — whichever comes first." Drazan v. U.S., 762 F.2d 56, 59 (7th Cir. 1985). In the instant case, therefore, the statute of limitations began to run when plaintiffs first knew that E.Y. had suffered a brain injury and that defendant might have caused it, or when plaintiffs could have discovered that defendant caused E.Y.'s injury, but not that defendant's acts or omissions might have constituted malpractice.

**April 2005**

Defendant claims that the statute of limitations began to run around the time of E.Y.'s birth on April 4, 2005. At the time of E.Y.'s birth, Tenille knew of a complication, and within a few days thereafter a doctor at the Hospital told her that E.Y. was deprived of oxygen during birth. Although Tenille knew of E.Y.'s injury in April 2005, she could not have known the government cause of the injury at this point, because "knowledge of cause cannot be imputed simply from the fact of injury." Thompson v. United States, 642 F.Supp. 762, 766 (N.D. Ill. 1986). Additionally, "[w]hen there are two causes of an injury, and only one is the government, the knowledge that is required to set the statute of limitations running is knowledge of the government cause, not just of the other cause." Drazan, 762 F.2d at 59. Thus, Tenille had to be aware, not only of the injury and the Hospital as a cause, but specifically of cause by the government (i.e., the Center), for the statute of limitations to begin to run.

Tenille had no reason to suspect that the treatment she received at the Center caused E.Y.'s injury at the Hospital. Although she knew she was not placed on a fetal monitor or given an ultrasound at the Center, she had no way of knowing what the effects would be, and neither plaintiffs nor defendant asserts that Tenille knew of Dr. Biney's request that she have prolonged fetal monitoring before giving birth. Based on the record as it currently exists, therefore, Tenille's knowledge at this point did not trigger the statute of limitations because "even if the injury is obvious and is seemingly the consequence of the doctor's conduct, whether that conduct constituted a departure from standards of due care is often difficult for a layman to judge." Steele v. United States, 599 F.2d 823, 828 (7th Cir. 1979). With the information provided in the context of E.Y's birth and subsequent diagnosis, Tenille suspected the doctors who attended the

birth, not those who provided her prenatal care. As alleged in plaintiffs' response brief, she was told by a physician at the time of E.Y.'s birth that he had been "deprived of some oxygen <u>during the delivery</u>." (Emphasis in original.) No mention was made of any prenatal cause.

Even though plaintiffs' counsel requested records from both the Center and the Hospital simultaneously, it makes sense to obtain all health records with respect to a pregnancy and childbirth in pursuing a cause of action, as defendant agrees. Plaintiffs argue, and defendant does not dispute, that in April 2005, while Tenille believed that the Hospital caused E.Y.'s injury, she had no reason to know that the Center also caused it. Defendant has not addressed the difference between plaintiffs' knowledge in April 2005 of the Hospital's possible liability as opposed to the Center's. If the plausible reason for an injury is natural or otherwise explicable causes, there is no reasonable basis to suspect other potential causes, because "it is not the purpose of the discovery rule to encourage or reward simple paranoia." <u>Thompson</u>, 642 F.Supp. at 768. Because Tenille knew that the Hospital proximately caused E.Y.'s injury, she had no reason to delve into her prenatal treatment based simply on what she knew in April 2005. To hold otherwise would encourage lawsuits against parties based on at most mere suspicion rather than actual facts. Therefore, the statute of limitations did not begin to run in April 2005.

**<u>November 2006</u>**

Defendant argues that the claims began to accrue on November 28, 2006, at the latest, when an experienced personal-injury attorney requested copies of prenatal records from the Center and the Hospital. Defendant claims that because plaintiff hired a personal-injury attorney who requested records from the Center, she knew of the government cause of E.Y.'s injury, but a "nonmedical subjective belief is inadequate to trigger the statute of limitations." <u>Gould v.</u>

7

United States, 684 F.Supp. 508, 512 (N.D. Ill. 1988). Although Tenille knew that she was not placed on a fetal monitor and did not have an ultrasound, as a layperson experiencing her first pregnancy she may not have understood the significance of these omissions. Therefore, even if Tenille and her personal-injury attorney believed that there was a possible government cause of E.Y.'s injury in November 2006, this was not enough to begin the accrual of the claims. See Stoleson v. U.S., 629 F.2d 1265, 1270 (7th Cir. 1980) (holding that with suits brought under the FTCA, "[a] layman's subjective belief, regardless of its sincerity or ultimate vindication, is patently inadequate to go to the trier of fact").

**December 2006**

The earliest time that the claims could have accrued is December 14, 2006, when plaintiffs' counsel first received partial records from the Center and the Hospital. Receipt of medical records, in conjunction with Tenille's knowledge of the course of her treatment, could have prompted a reasonable person to inquire further into the Center's potential negligence. See Gould, 684 F.Supp. at 511 ("the statute begins to run when a reasonable person would know enough to prompt a deeper inquiry that would reveal a potential cause"). At this point in time, Tenille had actual knowledge of E.Y.'s injury and the events surrounding his birth, and she might have had a subjective belief of the government cause as well as the information necessary to discover the government cause. See id. ("A claim accrues in a medical malpractice case either when the plaintiff has actual knowledge of his injury and its cause or when the plaintiff has the information necessary to discover 'both his injury and its cause.'"). Assuming the statute of

8

limitations began to run on December 14, 2006, the complaint filed on December 10, 2008, was timely.[1]

**September 2007**

Plaintiffs contend that the claims began to accrue at the earliest in September 2007, when plaintiffs' counsel received the first expert's opinion of negligence by the Hospital. Although plaintiffs were enlightened by a medical opinion discussing negligence with respect to the Hospital treatment of plaintiffs, there was no reason from the opinion provided that plaintiffs should have suspected the government cause at this point. This date is not a plausible beginning to the accrual because there was no additional information provided with respect to the government as a cause of injury, and "[t]he cause of which a federal tort claimant must have notice for the statute of limitations to begin to run is the cause that is in the government's control, not a concurrent but independent cause that would not lead anyone to suspect that the government had been responsible for the injury." Drazan, 762 F.2d at 59. Therefore, the first expert opinion could not have triggered the statute of limitations.

Although there was a lengthy delay between October 19, 2007, when plaintiffs' counsel first received a complete set of medical records from the Center, and November 2008, when plaintiffs' counsel sent the medical records for a second expert opinion, if the claims accrued at any point within this time period, the suit filed on December 10, 2008, was still timely.

---

[1] In Gould, the court held that the acquisition of records in conjunction with a subjective belief and knowledge of the events surrounding a birth were not sufficient to trigger the statute of limitations without a medical opinion confirming the belief. 684 F.Supp. at 512. But even if the statute of limitations had not begun to run until after December 2006, the complaint was filed within the two-year statute of limitations.

**November 2008**

Plaintiffs argue that the claims began to accrue at the end of November 2008, when plaintiffs' counsel received the second expert's opinion of negligence, which was the first to implicate the Center and Dr. Biney. This was the first time plaintiffs received a medical opinion implicating government negligence, and therefore, the last possible date on which the claims could have begun to accrue. The statute of limitations "begins to run on the date when the plaintiff discovers that he has been injured by an act or omission attributable to the defendant." Goodhand, 40 F.3d at 214. Receipt of the second expert's opinion constitutes plaintiffs' discovery that they might have been injured by omissions attributable to defendant.

In Stoleson, the Seventh Circuit held that the statute of limitations began to run when the plaintiff was told by a medical practitioner that the government was a potential cause, not from when she initially suspected it was the cause. 629 F.2d at 1270. November 2008 is the first point at which Tenille had actual knowledge of the government cause, which would certainly trigger the statute of limitations, in which case the complaint filed in December 2008 was timely. Although defendant argues that the Supreme Court has rejected the receipt of experts' opinions of negligence as a basis for the accrual of a tort claim, plaintiffs did not merely wait to hear of negligence by the Center. Kubrick, 444 U.S. at 123 ("We thus cannot hold that Congress intended that 'accrual' of a claim must await awareness by the plaintiff that his injury was negligently inflicted"). Rather, any delay in filing suit was due to the time it took to learn of a potential government cause.

## CONCLUSION

For the reasons set forth above, the complaint was timely filed within two years of each date on which the claims could have begun to accrue. Therefore, defendant's motion to dismiss is denied. Defendant is ordered to answer the complaint on or before July 20, 2011. The parties are directed to prepare and file a joint status report using this court's form on or before July 27, 2011. The status hearing previously set for July 7, 2011, is vacated and continued to August 4, 2011, at 9:00 a.m.

**ENTER:** **June 29, 2011**

_____
**Robert W. Gettleman
United States District Judge**